Thank you, Your Honor, Your Honors. I'm John Rogers. I am the attorney for the appellant, Joshua Asuncion. We believe that the Court is aware of, spread the breeze, is familiar with the factual situations. In a nutshell, we believe that the District Court erred in denying our motion to suppress as far as because there was no finding of probable cause, because they failed to evaluate whether probable cause existed to justify the search of the residents of 79944 Cherry Hill Drive. In the reply brief by the government, they didn't even address that issue as far as probable cause. We believe that under Hove, that the search warrant didn't rise to probable cause because that the facts simply did not show sufficient, were not sufficient to justify a conclusion that evidence of contraband would be found at the premises. Well, the question here, really, on appeal, is whether the District Court erred in not allowing a late filing of a the motion to suppress. Correct, Your Honor. And granting the retroactive extension of time, whether that was excusable neglect, and whether the Pioneer rule applies to Rule 45b. Correct, Your Honor. My understanding of the Pioneer is that going through the four factors, prejudice to the nonmoving party, length of the delay in what the delay was material, and whether the delay was in good faith, and I respectfully submit that the error was mine, that I was late. There's no doubt about it. You were the new counsel? I was. There was an original counsel who was appointed, right? I'm not sure, but I was on it, and I think, too, part of it was my unfamiliarity with, and it goes back to my thing, is that going back to and examining that, yes, I was late, but that examining the, when we look at Pioneer, where it became. Well, I'm just trying to get the facts straight. There was one, there was an original counsel before you? I believe I was the original counsel. I thought I recalled, Rebecca, telling him that there was only five days left to file the motion when you were appointed. Were you appointed or retained? I was retained, Your Honor. And do you know how long there was for you to file after you were retained? That I don't know, I think. And you don't know whether there was a lawyer before you? I don't have that information in front of me. But the delay was the fault of mine. But that, in terms of that, we're talking about the constitutional rights of my client. Right. Well, let's assume that Pioneer applies, and you can show excusable neglect. You still have to show good cause. You didn't argue that in your brief. What was the good cause that the district court could have relied on? As far as the good cause, that they could have simply examined the — in terms of excusable delect, or as far as the — Well, there seems to be an overlay in Rule 45 of good cause as well as excusable neglect. So you have to show your neglect as excusable, and then the court has to also seem to make a finding of good cause for it. I mean, some courts conflate those two, and some don't. But what was the good cause? I think it was — the good cause was that it was my — that, as far as that, I assumed that the warrant was good, and then only at a further examination, that I found that there were problems with the search warrant, and that once those became readily identifiable, that I — that I went in and explored that issue. Well, if we were to consider the search warrant on the merits and concluded that probable cause exists, none of this would matter, I assume, right? Correct. So we have to — that — we might or might not reach that issue, but if we decided on the merits, and conversely, I suppose we could reach that, although the proper course would probably be to remand if we found that the district court should have engaged in a pioneer analysis. Correct. And so the thing is, is that part of it was that, in order — going on to the last issue, as far as the plea agreement, that as part of the record that we — as part of the agreement that we preserved all issues concerning the search warrant and the excusable neglect, we put that on the record so that was — so we stated that my client would preserve that. We believe that it wasn't ambiguous, and we still don't understand the court's interpretation that we were only reserving the right to appeal the denial of a motion to suppress. Based upon that, we believe that if there's some ambiguity between the plea agreement, that, therefore, that plea agreement was not known involuntarily by my — by my client or the defendant, if — because at that point, if there was any ambiguity, the magistrate could have canvassed my client, or after I put on the record that we're preserving all issues as far as reasonable — as far as the motion to suppress and excusable neglect, the government could have come forth and clarified it. In this situation, they didn't. We put on all those issues that we were preserving the right for the — the right to suppress in conjunction with the excusable neglect, and so forth. That was not — that was not done. So, therefore, under — under Galagos, that it didn't rise that — that this waiver was truly knowledgeable involuntarily. And even, too, is that where it's found, even though I don't believe I was ineffective in preserving the right to appeal, that under the Tenth Circuit under U.S. v. Elliott, where ineffective counsel in the negotiating plea agreement can render that plea agreement invalid, the main point is that — I don't understand what you're arguing now. I think the plea agreement was inartfully drafted because I think it said that you were preserving your right to appeal the denial of a hearing on the motion to suppress, right? And there could be very good reasons for — the reasons for denying a hearing can be quite different from denying the motion to suppress itself. So I think that was inartful drafting, right? So now you're saying — I don't understand. Are you saying it's ineffective counsel? Well, what I'm saying is, is that — other circuits have found is that if I was someone who was responsible for not putting on the record as far as that — as far as clarifying the plea agreement, other circuits have found that they might find that the plea agreement can be found — can be rendered invalid because the client did not make this, the plea agreement, knowingly and voluntarily. You know, it's hard to see how there isn't probable cause here. You're free to leap to the ultimate issue. You've got a — you've got a confidential informant, you've got a drug buy, you've got a guy under surveillance who goes — watches multiple trips to the house. Why isn't there probable cause to believe that there might be drugs at the house? Under my view was that, going back to some of the individual facts, was that at first point when Blanco picked up the — what's now known as the unidentified mail, he was not — he was not seen going from that residence, nor was he seen carrying anything. During all these transactions, it was never stated in the affidavit that my client was actually carrying something that would — They didn't see a package, but it was right in the middle of a buy, and it seemed to be part of the transaction they followed. I mean — Well, the thing is, is that Blanco was observed with carrying a duffel bag in and — you know, and carrying it out. My client, or the unidentified mail, there was nothing shown that it was taken — that it was — that he either brought drugs to Blanco, who then gave it to the confidential informant, and also, too, that there was essentially like a five-day time lag, that when they arrested Blanco, they didn't use a search warrant, but that they simply did it for like a traffic stop. I think what it was was that they actually — Blanco then identified my client, but the problem was that that was never mentioned in the warrant. We believe that the date between the 8th and 13th is simply — it's too — it's too large of a time to make the warrant effective or to find probable cause, and also that they never established that — who actually brought the drugs to Blanco. I mean, they show that Blanco — But did they have to? I mean, the search warrant was for the location, not the person. Right, but they never tied as far as how this person was tied to the location, because when Blanco first, you know, picked this person up, he just simply — I mean, he was on the street, so it's our belief that there was simply not any nexus between the drugs and the residence that was ultimately searched. Good morning, and may it please the Court. My name is Patrick Walsh, and I represent the United States Appellee in this matter. The lower court correctly — or did not abuse its discretion when it denied the motion to suppress as being untimely. The motion was filed eight months after the deadline. It was filed without any request at the same time for continuance or for extension to file the motion. There was no explanation of excusable neglect. A supplement was filed a week later, again, with no explanation of why it was filed late. The motion for extension of time was filed one day before the calendar call in this case, five days before the trial date. That was the first time where the lower appellate's counsel requested an extension of time to file the motion. And the — there was no affidavit attached to that explaining why there was a delay. The only explanation in that was that at this — he had — was he needed careful review of this very short affidavit for a search warrant, and only after careful review, while preparing for trial, did he notice an issue. Do you agree that the Pioneer Rule applies here? The — Your Honor, the lower court, I think, looked directly to the Federal Rules of Criminal Procedure and the local Rule 45.1b. And those deal with excusable neglect and good cause. And so I think that would be the primary rule for the court to look at. Why doesn't Pioneer apply? I mean, Pioneer talks about what excusable neglect means in every other context. Why wouldn't it apply under Rule 45? It's definitely something that I think the court could look to in determining what constitutes excusable neglect. Well, let me ask you a question, Judge Thomas, raised. Are you aware of any case where they find excusable neglect but not good cause for excusable neglect? I'm not aware of any case, no. It's hard for me to understand how — what you need in addition to excusable neglect, whether you need — whether you do need anything in addition once you've established excusable neglect. Do you then need to show good cause for your excusable neglect? If you didn't have good cause, could it still be excusable neglect? Maybe none of this has much to do with your case, but it would help to understand how the rule works. Do you have a view? My view is simply the lower court got it right, however you look at it. Well, that's your — that's your standard view. The — I guess the question here is — We're talking — we're painting a little broader canvas. I mean, it does seem to be an odd situation that some people, some courts, have an overlay of good cause in addition to excusable neglect. But on the other hand, some courts seem to conflate the two. What's your view? The good cause, I think, my view without case law support is it's some way to incorporate the abuse of discretion standard, that the lower court gets the right to apply the test provided by it but also gets the right to make the decision based on the factors before it. And the lower court is in the position to make that because it has to manage its caseload. It's aware of the parties, aware of the issues involved, aware of the weight of the issues before it in the motion. And so because it's amorphous, I think that that's something that the lower court — it gives it the ability to either apply factors or also work based on its knowledge that may or may not be a part of the record. Okay. And why do you think this is not excusable neglect under the pioneer factors? Let's assume the pioneer factors apply. The prejudice factor. Here, it's the only issue they have. They've got a losing case. Their only hope is that the search is wrong. So the prejudice to them is complete. There's no real prejudice to the government or the court there. Well, there's — particularly in drug cases, there's always the assumption that there's much less prejudice to the government. But this was a motion filed. The motion for extension of time was filed right before trial, the day before calendar call, five days before trial. And that would prejudice any party. And so there is — How would it prejudice you if they're — I mean, you'd be prejudiced if you lost the motion. But that would happen no matter when it was. I mean, why are you prejudiced? We've already gone through expended resources preparing for trial. We've looked — we've focused our issues and our witnesses and our preparation not on the legal issue, but on proving our facts to a jury. And so we're in a different mode. We also have — you know, we've subpoenaed witnesses. We've made them maybe arrange their schedules. So there is that type of prejudice in the fact that we're at a totally different stage of the proceedings here. All right. Then the next is the impact of the delay on the proceedings. That's the same — you're saying — Well, the length of delay and the prejudice to the efficient administration of justice I think here is very strong. This is a very lengthy delay. It's eight months long. It's right before trial. And the judge — You know, if the judge had said at the outset, we'll hear the motions the week before trial, which sometimes they do. They often don't hear motions to suppress eight months before the trial. They sometimes set them very close to trial. That wouldn't have done you any great harm. In the District of Nevada, the motions are referred to the magistrate judge. And so, therefore, the magistrate judge has to have time in their very busy schedule to set a hearing, to hear the hearing. And then they have to have time to issue a report and recommendation. Then that's sent up to the district court judge. And the parties have ten days to file their objections and then the response to the objections. And then once those are filed, the district court judge has to have time to issue its written ruling. So it would, under the practice of the District Court of Nevada, it would seriously impact the efficient administration of justice. The district court also has a very busy caseload, not just criminal cases, but civil cases that are waiting to see if they can go to trial. And so the day before calendar call was when this motion for extension of time should be filed. Other parties who weren't, who didn't have longer speedy trial dates or were civil cases can also be impacted. And so I think the Court could consider that as impacting the efficient administration of justice in the courts. I mean, the Court has to have the ability to regulate its caseload by setting these motion dates. And I think it should require more, given the length of this delay, than just saying we had to carefully review the affidavit to find this issue when the whole case centers on the execution of the search warrant to allow it. If this is not, if this, if a defendant with this type of record gets this continuous and gets the ability to file this, then a lower court judge can never deny it So there was no, the defendant didn't say, well, a prior attorney, there was a prior attorney on this case, that I didn't have a chance to do it because of the prior attorney. He didn't, that would have been an issue the Court might have considered differently. That was never raised. The only issue raised was I had to carefully review the affidavit for the search    warrants to find the search warrant.  definition that prove that we face a shortage of information on this issue. And that should not be enough. Let me ask you this. Although maybe, and this goes back to the magistrate judge and he would have to decide normally whether there was, you know, the matter on a hearing. In this case, is there rather, is there anything really that has to be heard? Aren't the facts established so that if we had to get to the issue, we could decide it? Or are there facts in dispute and is a hearing required? So if the only, the only allegation made by the appellant is that the search warrant on its face lacks probable cause and it's so deficient in probable cause that under Leon, an officer, would have, was wrong to even rely on it. And so that is the only issue they raised. There was no allegations that there were omissions or misstatements in it under Franks, only that when reading the search warrant, probable cause isn't there. So it's essentially a legal issue. Absolutely. That's absolutely correct. If you had the suppression hearing, I take it the same officers that you were going to use at trial could have testified? Yes. If a hearing was needed. Yeah. The judge could have ruled without a hearing because of the issues raised. They would have been, yes, they would have been the same. All right. Thank you, counsel. All right. The case is argued and will be submitted.
judges: Reinhardt, Thomas, Restani